ELISHA W. DUTCHER *et al.*

*v.*

EMILY LEAKE *et al.*

1. JUDICIAL SALE — *who is bona fide purchaser.* When a purchaser at a judicial sale combines and confederates with the officer and others to conduct the sale as secretly as possible to prevent competition, and represents to the party interested in such sale that it had been postponed, with the intention to deceive such party, to the end that he shall not be present to compete for the purchase of such property at such sale, such party is not a *bona fide* purchaser, and will not be protected against errors in the proceeding.

2. SAME — *inadequacy of the amount paid.* Although mere inadequacy of consideration, standing by itself, is not a sufficient reason for setting aside a judicial sale, yet if it exist in connection with other circumstances tending to impeach the fairness of the transaction and the good faith of the purchaser, it is entitled to great weight as determining the *bona fide* character of the purchaser and to his protection as such.

APPEAL from the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

The facts are fully stated in the opinion of the court.

Mr. EMERY A. STORRS, for the appellants.

Mr. JAMES K. EDSALL and Mr. BERNARD H. TRUESDELL, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 6th of August, 1856, the Shelburne Manufacturing company, of which Frederick R. Dutcher was president, bor-

rowed from one Daniel Leake, now deceased, the sum of $9,822.92, and, to secure its payment, executed a deed of trust on certain real estate to Lemuel W. Atherton as trustee. On the 12th of November, 1860, the company borrowed another sum of $2,750 from said Leake, and executed another deed of trust to said Atherton. On the 1st of April, 1857, Atherton sold the real estate to Leake under the deeds of trust, and executed to him a deed. In June, 1857, Cummins and House filed a petition for a mechanic's lien against the company, making Leake and Atherton parties. Leake died on the 27th of September, 1857, intestate, and leaving infant children, who, on the 11th of June, 1858, were, with the administrator and administratrix of Leake, brought into court by a supplemental petition. The petition alleged that Cummins and House furnished lumber under a contract made in September, 1856, and that the last lumber was furnished in December, 1856. The decree found the company was seized, on the 16th of December, 1856, of a fee simple in the premises, and ordered the sale of the title of which it was seized on that day. On the 29th of January, 1861, the property was sold by the sheriff under the decree, and struck off to Elisha W. Dutcher for the sum of $540.19, and on the 7th of March, 1861, the sheriff made to him a deed.

In the mean time Emily Leake, the mother of the infant heirs of Daniel Leake, had been appointed their guardian, and in November, 1857, she obtained from the Circuit Court of Lee county permission to sell their real estate. Acting under this authority, she sold the premises in controversy, on the 6th of March, 1858, to Joel L. Coe, for $15,000, executed a conveyance, and took back a mortgage to secure the purchase money. This not being paid, Emily Leake and the minor heirs filed their bill against Coe to foreclose the mortgage, and made parties Frederick R. Dutcher, Edward F. Dutcher, Elisha W. Dutcher, Solon Cummins, Willis T. House and the Shelburne Manufacturing company, asking that the sale and decree in the mechanics' lien case be set aside. The Circuit Court, after hearing the case on the pleadings and proofs, so decreed,

and Elisha W. Dutcher, Frederick R. Dutcher and the Shelburne Manufacturing company appealed.

The counsel for the appellants does not deny that there are technical errors on the face of the record in the mechanics' lien case, for which that decree is liable to be set aside on a bill of review, which the bill in the present case was in part designed to be; but he claims for Elisha W. Dutcher the position of a *bona fide* purchaser at a judicial sale for a valuable consideration, and that his title is therefore unaffected by errors in the decree. If Dutcher occupied that position the sale could not be disturbed, but we have arrived at the contrary conclusion, and will briefly state the reasons for our opinion.

The gross inadequacy of consideration is the first thing to be remarked in connection with this sale. The property is shown to have been worth $15,000. About this there seems to be no controversy. It was struck off at the sheriff's sale for $540.19, about one-thirtieth part of its entire value. Now, although mere inadequacy of consideration, standing by itself, is not a sufficient reason for setting aside a judicial sale, yet, if it exist in connection with other circumstances tending to impeach the fairness of the transaction and the good faith of the purchaser, it is certainly entitled to great weight. If the consideration is adequate, that fact alone furnishes an argument in favor of the presumptive fairness of a sale, and would induce a court to lend a less ready ear to other circumstances of a questionable character. But, if property has been sacrificed at one-thirtieth of its value, and that too the property of infants, this fact may well turn the scale in a case where the other objectionable features might not furnish a just ground of interference. *Dickerman* v. *Burgess*, 20 Ill. 266.

Meeting this fact, then, at the very threshold of this case, we proceed to inquire whether, notwithstanding this circumstance, Elisha W. Dutcher can claim protection as a *bona fide* purchaser for a valuable consideration.

Frederick R. Dutcher was the president of the manufacturing company against which this judgment was rendered, and had been from the beginning a large stockholder and its

active manager. Elisha W. Dutcher and Edward F. Dutcher were his brothers. The decree in the mechanics' lien case was taken in May, 1859. The sale did not take place until January, 1861. The complainants in that suit had, in the mean time, received payment from some person, and had assigned their decree, as claimed by the appellants, to Edward F. Dutcher. Frederick R. Dutcher continued to control the premises and the business of the company. In his capacity as president he had executed the original deeds of trust to Atherton, and he knew of the subsequent sale under those deeds, and of the sale by the guardian to Coe, and that the title of the property was gone from the company, subject, however, to the decree under the mechanics' lien. Under these circumstances he himself directed the clerk to issue the execution under which the sale was made, and paid to the clerk his fees therefor. When the day of sale arrived, DeWolf, the administrator of the estate of Daniel Leake, having learned of the proposed sale, went to Frederick R. Dutcher, on the day for which the sale was advertised, and inquired of him if it was to take place on that day. Dutcher replied it would not, told DeWolf he need not attend, and promised to have the sale postponed. De Wolf was not only administrator of the estate, but attorney for Mrs. Leake, the guardian of the children, and had been instructed by her to bid at the sale. He was induced by the representations of Dutcher to stay away.

Notwithstanding these assurances of Frederick R. Dutcher, the sale was held in the afternoon, and was attended by circumstances which showed that the parties concerned desired to prevent fair and open competition, by having the sale consummated as quietly and rapidly as possible. The deputy sheriff, Hollenbeck, testifies, it was understood in the forenoon between Frederick R. Dutcher, A. W. Pitts, who appeared as agent for Elisha W. Dutcher, and himself, that the sale was to take place in the afternoon, and that Pitts was to be a bidder. Frederick R. Dutcher and Pitts notified him, when they desired the sale to be held, and he obeyed their wishes. They were the only persons actually present at the sale, which was held,

not at the door of the court-house, as usual, but some fifteen feet within the hall. The door of the county clerk's office, however, happened to be open, and the clerk, hearing the persons in the hall, stepped to the door as they were making the sale. He testifies the sheriff made some remark about the trouble they had had to get rid of Morely, a former administrator of the Leake estate. He also testifies that he heard no outcry of the sale for the purpose of attracting attention, no bid cried by the officer, and that the sale was over, and they had left within half a minute after he stepped to the door. The sheriff testifies that Pitts suggested the property be struck off as quickly as possible, and that it was struck off as soon as it could be. According to his recollection, no money was paid him on this bid, or at any other time, by Pitts or by Elisha W. Dutcher. The next day, which was Sunday, Frederick R. Dutcher took the deputy sheriff to Oregon, in Ogle county, the residence of Edward F. Dutcher, a distance of eighteen miles, and, not finding him there, proceeded to Polo, for the purpose of procuring his receipt, as assignee of the judgment, for the purchase money. The officer testifies that, according to his recollection, no money passed through his hands, though Edward F. Dutcher swears he "received from the officer the amount of the damages and interest in the case at that time."

It will be observed that Frederick R. Dutcher, on the theory of appellants, and if this transaction was an honest one, had no interest whatever either in the judgment or in the purchase, and yet he is the only one of these three brothers who appears in person on the scene; and he manages the whole affair, from the ordering out of the execution to the procuring of Edward F. Dutcher's receipt for the purchase money. As to why he did this, no explanation is offered. The pretended assignee of the judgment was not present at the sale to protect his interest. The pretended purchaser was not there. But Frederick R. Dutcher, who disclaims all interest in the affair, and who was agent for nobody, orders out the execution, pays the fees, tells a falsehood to the attorney of Mrs. Leake to prevent his attending the sale, appoints, in conjunction

with the nominal agent of his brother Elisha, the exact moment for the sale, and when it is completed, takes the officer and rides two days in order to procure a receipt from his brother Edward in favor of his brother Elisha, and make everything fair on the face of the papers. If the money for the purchase was really paid by Elisha to the officer, why did Frederick start on Sunday for Oregon, in an adjoining county, and follow Elisha W. Dutcher to Polo, in order to procure his receipt? If the money was paid by Pitts as agent for Elisha W. Dutcher, it could have been proven by him, but he was not called as a witness, and no explanation is offered of his absence. The only mode of reconciling the evidence of the officer that, according to his recollection, he received no money, with that of Edward F. Dutcher, that he received at Polo, from the officer, the damages and interest, is by the theory that Frederick R. Dutcher paid the money at Polo in the name of the officer, and in order to give color to a transaction that he had been at so much pains to carry through. But in view of all the circumstances, we are irresistibly led to one of two conclusions: either Frederick R. Dutcher, to whom Elisha W. had lent the use of his name, was the real party in this transaction, and for whose benefit the property was to be acquired at a small fraction of its value through this judicial sale, or that he and Elisha W. Dutcher were acting in concert, with the view of accomplishing the same purpose for their common benefit, the actual management of the matter being intrusted to Frederick. In either event, Elisha W. Dutcher would not only be chargeable with what occurred at the sale in the presence of his avowed agent Pitts, showing that the sale was not fairly conducted, but with the false statements of Frederick to the attorney of Mrs. Leake for the purpose of preventing his presence at the sale. That Pitts and Frederick R. Dutcher were acting in concert, is evident from the testimony of the officer, that they were together prior to the sale, and that he received his instructions from them jointly as to the time and manner of holding the sale. The false statements to the attorney of Mrs. Leake, and the means taken at the sale to prevent

competition, considered in connection with the gross inade
quacy of the price, are sufficient reasons for setting the sale aside.

It is urged, however, by the counsel for appellants, that the
bill does not charge the fraud in the sale with sufficient dis-
tinctness and particularity to justify the consideration of the
proof as to irregularities in the sale. It is true there are no
allegations in the bill which would justify the court in setting
aside the sale on the ground of these irregularities alone, ad-
mitting them to be, in themselves, a sufficient cause. It must
also be admitted that the averments in the bill in regard to
fraud in the sale are very loose and general, and, so far as that
portion of the bill goes, would have been liable to a demurrer,
or perhaps the evidence offered in their support, if objected to,
should have been excluded until the complainants had amended
their bill. But there was neither demurrer nor objection to
the evidence. The bill does charge that Edward F. Dutcher,
Elisha W. Dutcher and Frederick R. Dutcher, combining and
confederating together to injure the complainants, procured
the execution to be issued; that Elisha W. Dutcher did not
pay the amount of his bid to the sheriff; that his name was
used in the transaction for the purpose of placing the title in a
third person and an apparently innocent purchaser, and that
the pretense of Elisha W. Dutcher to be a *bona fide* purchaser
for a valuable consideration is untrue. The bill also charges
the inadequacy of the consideration. The substance of these
charges is, that Elisha W. Dutcher was not a purchaser in
good faith for a valuable consideration, but was acting collu-
sively with Frederick R. and Elisha W. Dutcher to defraud
the complainants. The facts upon which we have commented
do, in our opinion, establish that charge. If objected to on the
hearing, all these facts would not have been admissible in evi-
dence without an amendment of the bill charging them more
specifically. But they were not objected to, and we do not deem
it proper to reverse the decree and remand the cause merely that
an amendment may be made which would have been made at
the proper time if objection had been made to the evidence.

The decree must be affirmed.          *Decree affirmed.*