EDWARD C. RICHARDS, ISAAC BASSETT, AND ROBERT W. ABORN, COMPLAINANTS AND APPELLANTS, *v.* SYLVANUS HOLMES, A. H. HARPER, GEORGE A. DWIGHT ET AL.

Where there was a deed of trust to secure the payment of a note which had two years to run, and the trustee was empowered to sell in case any default should be made in payment of any part of the debt and interest, the trustee could sell the property if the interest for the first year was not paid when due.

It was not necessary that the trust deed should describe the interest as being annual.

The trustee had power to adjourn the sale from time to time, if duly advertised, and it should seem to him necessary in order to secure a fair price.

The creditor for whose benefit the sale was made had a right to request the auctioneer to make a bid for him, if fairly used.

Assignors who did not indorse the note, but assigned it by deed, and covenanted that it should be first paid out of the proceeds of sale of the property conveyed in the deed of trust, cannot be held personally responsible. The covenant in the assignment was only that the note assigned should have a preference.

THIS was an appeal from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

The case is stated in the opinion of the court.

It was argued by *Mr. Bibb*, for the appellants, and by *Mr.*

*Fendall* and *Mr. Tracy*, for the appellees. There was also a brief filed by *Mr. Bradley*, as counsel for Southworth, Litchfield, and Beach.

*Mr. Bibb* made the following points :—

1. That the note was dated on the 1st of May, 1846, and payable in two years. The trustee had no right to sell until the 1st of May, 1848, whereas he sold on the 21st of October, 1847.

2. The allegation set up that Holmes had verbally agreed with Harper to pay the interest semi-annually, &c., cannot be permitted to vary the deed or enlarge the powers of the trustee. Nor could the consent of Holmes impair the rights of Richards, Bassett, and Aborn. They had a right to redeem the property when the note became due, the property being worth more than the lien upon it.

3. The notice of sale was not properly given.

4. The auctioneer was seller and bidder for Harper.

The trustee could not purchase the estate himself; he could not buy as the agent of another; he could not employ the auctioneer to bid for the estate on behalf of Harper. *Ex parte* Bennett, 10 Ves. 393; Coles *v.* Trecothick, 9 Ves. 248; *Ex parte* James, 8 Ves. 345, 348, 350; *Ex parte* Lacey, 6 Ves. 625; Lister *v.* Lister, 6 Ves. 631, 632; Twining *v.* Morris, 2 Brown Ch. Ca. 326; The York Buildings Co. *v.* McKenzie, 3 Brow. Par. Ca., Appen.; Davoue *v.* Fanning, 2 Johns. Ch. Rep. 254, 257, 268, 269, 270.

According to established principles, such a sale as this cannot stand in a court of equity.

The counsel for the appellees, after justifying the sale in other respects, thus noticed one of the points of alleged defectiveness :—

The trustee did not bid at all; Harper's bid was regular. His rights as a creditor, whose only security for his whole fortune was the property advertised for sale, stood on ground as strong, at least, as that of the owner of it. And, though it is not lawful for an owner to employ an agent " to take advantage of the eagerness of bidders, to screw up the price," yet, as a " defensive precaution," " a bidder may be privately appointed by the owner, to prevent the estate from being sold at an under-value." 1 Sugden on Vendors, (9th ed.) 26, 27; Fonbl. Eq. Bk. 1, ch. 4, § 4, n. X; 1 Mad. Ch. Pr. (4th Am. ed.) 324, 325; Smith *v.* Clarke, 12 Ves. 477; Steele *v.* Ellmaker, 11 Serg. & R. 86; Jenkins *v.* Hogg, 2 Const. Rep. (S. C.) 821; Wolfe *v.* Luyster, 1 Hall, N. Y. R. 146; Phippen *v.* Stickney, 3 Metc. 384. Harper made only one bid, and that for " defensive precaution." The bid was made through the auctioneer, who was the agent of both parties.

Smith's Mercantile Law, 301, and the cases there cited; Conelly *v.* Parsons, 3 Ves. 625, n.

It is denied that the property was sold at " a very inadequate price," or that the amount at which it is said to have been assessed on the books of the corporation of Washington (of which there is no evidence) is a true test of its value. But even if the price were " very inadequate," the inadequacy would be no ground for annulling this sale. 1 Fonbl. Eq. 128; 1 U. S. Digest, 344, pl. 33, and the cases there cited. It will be contended that the sale was in all respects regular; and that, if it were not so, yet the complainants cannot avail themselves of the imputed irregularities.

Mr. Justice CURTIS delivered the opinion of the court.

This is an appeal from a decree of the circuit court for the District of Columbia. The appellants filed their bill in that court to set aside a sale, made to satisfy a prior incumbrance on land, upon which they claimed to have a second incumbrance. In the court below, some question appears to have been made concerning the priority of the incumbrances; but none is made here, it being conceded, that though that claimed by the complainants was the earliest in date, the other was first recorded, and takes precedence.

The sale in question was made under a deed of trust, whereby Holmes, the debtor, conveyed to the defendant, Philip R. Fendall, in trust to secure the payment of a promissory note, bearing date May 1, 1846, payable in two years from date, for $2,800 and interest, payable annually.

It is objected that the sale, which was made on the 21st of October, 1847, after one year's interest had become due, but before the principal sum was payable, was premature. This depends upon the meaning and effect of the power of sale contained in the deed. It was competent for the parties to agree to a foreclosure by sale for non-payment of interest, and the question is, whether they did so agree. The event in which the trustee is empowered to sell, is thus described in the deed :—

" But if the hereinbefore described promissory note, with the interest legally due thereon, shall not be fully paid off and discharged when said note shall be due and payable, and payment of the same shall be demanded, or if any note or notes given in substitution for or renewal of the hereinbefore described promissory note shall not be fully paid off and discharged according to the tenor and effect of the said substitute or new note or notes, together with the interest legally due on such substitute or note or notes, so that any default be made in payment of any part of

the aforesaid debt of two thousand eight hundred dollars and interest, then so soon after such default, &c."

The omission to pay the first year's interest was a default within the express words of this power. That interest was part of the interest secured by the note, and a failure to pay it was a "default in payment of part of the aforesaid interest." The deed authorizes the trustee to sell for any such default, and, consequently, the sale was not premature.

It was argued that the trust deed does not describe the note as bearing annual interest, and, consequently, that the subsequent incumbrancer has a right to insist that, as against him, there was no power to sell for non-payment of such interest.

It is true the deed does not purport to describe the interest which is to become due on the note; but it clearly shows that it bore interest at some rate, and payable at some time or times, and this was sufficient to put a subsequent incumbrancer on inquiry as to what the rate of interest and the time or times of its payment were. The deed, in effect, declares, and its record gives notice to subsequent purchasers, that its purpose is to secure the payment of such interest as has been reserved by the note; the amount, and date, and time of payment of which are mentioned. We do not think the mere omission to describe in the deed what that interest was to be, is a defect of which advantage can be taken by the complainants.

The complainants further insist that the property was not duly advertised. The provision in the deed of trust upon this subject is as follows: "It shall be the duty of the said Philip R. Fendall or his heirs to enter upon the hereinbefore conveyed piece or parcel of ground and appurtenances, and sell the same at public auction to the highest bidder, or at private sale, for cash or credit, according to his or their discretion, after having given public notice of such sale, by advertisement, at least thirty days previously thereto, in the National Intelligencer, or in some other newspaper printed or published in the city of Washington aforesaid."

Inasmuch as the trustee was empowered to sell at private sale, as well as at public auction, his power extended to a private sale made at any time after thirty days' notice. Having given notice for the space of thirty days that he was about to sell the property, he might, at any time after the expiration of that thirty days, have proceeded to sell it at private sale. But this notice should be such as to call for purchasers at private sale. The notice given was of a sale at public auction. This did not call for purchasers, except at the time and place mentioned in the notice. No sale was made at the time and place designated in the thirty days' notice, published in the National Intelligencer.

At that time and place the attendance of bidders was so small, that the trustee believed an attempt to sell for a fair price would be fruitless; and he adjourned the sale for the space of fourteen days, giving notice of such adjournment in the same newspaper of the next day. At the time and place thus fixed for the adjourned sale another postponement took place, for the same reasons, for one week; and the place of sale was changed from the premises to the rooms of the auctioneer. Of this postponement, also, public notice was given on the next day, in the same newspaper.

There is no reason to suspect the least unfairness on the part of the trustee, or any one concerned. His conduct seems to have been dictated solely by an honest desire to obtain the best price for the property. Nor is there any ground for believing that either of these postponements prejudiced the interest of the complainants. They stand upon the objection, that though the trustee might have sold on the first day, of which thirty days' notice was given, he could not on that day adjourn the sale.

But we consider that a power to a trustee to sell at public auction, after a certain public notice of the time and place of sale, includes the power regularly to adjourn the sale to a different time and place, when, in his discretion fairly exercised, it shall seem to him necessary to do so in order to obtain the fair auction price for the property.

If he has not this power, the elements or many unexpected occurrences may prevent an attendance of bidders, and cause an inevitable sacrifice of the property. It is a power which every prudent owner would exercise in his own behalf under the circumstances supposed, and which he may well be presumed to intend to confer on another. This power of sale does not undertake to prescribe the particular manner of making the sale. It is to be at public auction, and " after having given public notice of such sale by advertisement at least thirty days;" but it assumes that the sale will be conducted as such sales are usually conducted. A sale regularly adjourned, so as to give notice to all persons present of the time and place to which it is adjourned, is, when made, in effect the sale of which previous public notice was given.

The courts of several States have gone further in this direction than we find necessary, though we do not intend to intimate any doubt of the correctness of their decisions. They have held that a public officer, upon whom a power of sale is conferred by law, may adjourn an advertised public sale to a different time and place, for the purpose of obtaining a better price for the property. Tinkom *v.* Purdy, 5 Johns. 345; Russell *v.* Richards, 11 Maine, 371; Lantz *v.* Worthington, 4 Barr, 153; Warren *v.* Leland, 9 Mass. 265. If such a power is implied where the law, acting

*in invitum*, selects the officer, *à fortiori* it may be presumed to be granted to a trustee selected by the parties.

The remaining objection is, that the defendant Harper, the creditor for whose benefit the sale was made, through the trustee, requested the auctioneer to bid for him the sum of twenty-five hundred dollars; that the auctioneer did so, and there being no higher bid, the property was struck off to Harper. It is insisted that this renders the sale void.

We do not deem it necessary to examine the numerous and somewhat conflicting decisions upon the subject of by-bidding, or bidding by persons standing in fiduciary capacities. This case stands clear of those decisions and of the principles upon which they rest. No decision lays down a positive rule that such sales, though affected by such bidding, are, *per se*, and as between all persons, void. They may be avoided by parties whose just interests have been injuriously affected by such misconduct, provided the rights of innocent third persons are not thereby disturbed.

It was for the advantage of these complainants, as subsequent incumbrancers, that this property should sell for the best price which could be obtained. Even improper practices to enhance the price, if any such had been resorted to, could not be complained of by them. It is only some practice to prevent bidding, or procure a sale for less than the property would have otherwise brought, which can be relied on by them to avoid the sale. We have no doubt the creditor, for the satisfaction of whose debt the sale was made, had a right to compete fairly at the sale; but whether he had or not, his doing so could not be injurious to the complainants.

It is true he employed the auctioneer to bid for him; but this fact alone could not depreciate the price. Such an authority may be used for fraudulent purposes; but, if fairly used, its tendency is to enhance the price; and in this case there is no evidence that it was intended to be, or in fact was, unfairly used. On the contrary, there seems to be no room for doubt that the price bid by the auctioneer for Harper was more than any other person was willing to give. It must be remembered, that the auctioneer was not employed as the agent of the creditor to purchase the property for him at the least price at which it could be obtained. Such an agency an auctioneer should not undertake. It is inconsistent with his relation to the seller, and with the faithful discharge of his duty to the seller.

But an agency simply to bid a particular sum for a purchaser, amounting to no more than receiving from the purchaser, before the auction, a bid which is to be treated as if made there by the purchaser himself, is not necessarily inconsistent with any duty

of the auctioneer, and does not enable any one to avoid the sale.

And the same remark applies to the trustee. It was his duty to obtain for the property the best price he could by the use of due diligence in a fair sale. It would have been improper for him, in behalf of the creditor, to employ the auctioneer to buy at any thing short of that best price. But there was no impropriety in his employing him to bid a particular sum for the creditor, to prevent a sacrifice of the property.

We have considered all the objections to this sale made by the complainants, and finding neither of them valid, the decree of the court below is, in that respect, affirmed.

As to so much of the complainants' bill as seeks relief against their assignors, in the event of not obtaining satisfaction from the land, we are of opinion that these assignors are under no such liability as is asserted by the complainants. The complainants purchased a negotiable note which was overdue. The assignors did not indorse it, but simply assigned it by deed. They entered into certain specific covenants concerning the subject-matter assigned; and their liability depends exclusively on these covenants. Neither of these covenants appears to have been broken. The only one concerning which any doubt has been raised is the following:— -

"And we do in like manner covenant, promise, and agree, that the said note of three thousand dollars, hereinbefore assigned, shall be and is entitled to payment out of any sale of the premises conveyed in and by the deed of trust aforesaid, before the other note therein specified, and shall have a prior lien on the said premises, or the proceeds thereof."

We think the purpose and effect of this covenant was, not to secure payment out of any sale which might be made by any party under any title to the premises, but only to assure the priority of payment of the note assigned, in preference to the other note, out of any sale made under the particular title to the premises described in the deed of assignment.

The covenant that the note assigned is due, is shown to have been kept by the note itself, in the absence of other evidence. The answer admits the receipt of moneys from the maker on account of other debts, but denies any payment on account of this note; and there is no evidence to the contrary.

The decree of the circuit court is affirmed, with costs.