Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, }
Hon. ALFRED BOSWORTH, } Justices.

---

## John J. Reynolds v. Thomas T. Hoxsie.

Prior to the enactment of the 12th section of ch. 195 of the Revised Statutes, an officer charged with an execution which he had levied upon real estate had an incidental power, for good cause, to adjourn from time to time the sale of the estate levied on, fixing the day of the adjourned sale at such time as he, under the circumstances, being responsible for a proper exercise of his discretion, thought fit, and giving reasonable notice of the adjourned day of sale in the manner provided by law for giving notice of the original sale; the section recognizing, but not conferring the power of adjournment, and its whole force being expended in its requiring, at least, one week's notice of the adjourned sale in manner aforesaid.

An execution sale of real estate which took place in 1855, before the enactment of said section, after being twice adjourned to enable mistakes in the newspaper advertisement to be corrected, was held valid.

EJECTMENT to recover an undivided ninth part of a tract of land in Richmond, Washington county, known as the Rey-

nolds Hoxsie farm. The case was submitted to the court in fact and law, under the general issue.

At the trial, it appeared that the plaintiff claimed title under a sheriff's deed to the interest of Reynolds Hoxsie, Jr., in the aforesaid tract possessed by the defendant, which interest was sold to the plaintiff on the 28th day of July, 1855, as the highest bidder therefor, at a sale under a levy thereon of an execution in favor of the plaintiff against the firm of Gardner & Hoxsie, of which the said Reynolds was a copartner. The officer's return upon the execution showed, that the levy was made on the 12th day of February, 1855, and that on the same day he posted up notices thereof, and that the interest attached would be sold on the premises on the 24th day of May, 1855, at 10 o'clock A. M., in three public places in Richmond; that at the above time and place of sale, he adjourned the sale to the 23d day of June, 1855, on the premises, and posted up in three public places in Richmond notices of the adjournment, and advertised the adjourned sale once a week, for three weeks, next before the time of the adjourned sale, in the " Westerly Echo," a newspaper printed in the town of Westerly, in the county of Washington; that on said 23d day of June, 1855, at half-past 10 o'clock, the officer charged with the execution adjourned the sale to take place on the premises on Saturday, July 28th, 1855, at 10 o'clock A. M., and posted up notices of the adjournment in the same three public places in Richmond as before, and advertised the sale for three weeks next before it in the " Narragansett Times," a public newspaper printed at Wakefield in the county of Washington, at which time and place he sold the interest in the property levied on to the plaintiff, as the highest bidder therefor, for the sum of $200, and that on the 7th day of August, 1855, the plaintiff, upon payment of that sum, received from the sheriff the deed under which he claimed title. It was proved, that the reason for the first adjournment, — from May to June — was the discovery of a mistake in the advertisement of the sale in the newspaper, the day of the week named therein for the sale not corresponding with the day of the month named; and that the officer was afraid, on account of this mistake, to proceed with the sale, and with

Reynolds *v.* Hoxsie.

the consent of the plaintiff adjourned the sale until June 23d. It was also proved as the reason of the second adjournment, — from June to July, — when the sale took place, that there was a misstatement in the newspaper advertisement of the sale of the day of the levy; the levy being stated therein to have been made on the 12th day of *January*, 1855, when in fact it was made on the 12th day of *February*, 1855, and that on this account the sale was adjourned a second time with the plaintiff's consent.

*R. W. Greene*, for the defendant.

The officer had no power to adjourn the sale. Ch. 195, sect. 12, Rev. Stats. is an enabling act upon this subject, and confines the sheriff's power to adjourn to occasions of accidents, and extraordinary storms and tempests.

The first advertisement was void, the date being impossible. There was no legal sale to adjourn, and the sheriff should have started *de novo*.

This was not an adjournment for want of bidders; but even in such a case, the sheriff should return his process to the court issuing it, and ask that a new one should issue. The statute requires the notifications to be posted up three months; and these set forth the day of sale proposed. The notifications naming the times to which the sale was postponed, were posted up only a month each. Any change in the notification should be published by posting, as long as the statute requires the original notification to be posted.

*Dixon*, for the plaintiff, in reply.

The practice in this state has always been for sheriffs to adjourn sales upon execution, and for less than three months; and to hold the contrary would unsettle numerous titles by execution supposed to be good. The whole purpose of ch. 195, sect. 12, Rev. Stats. was, not to enable the sheriff to adjourn an execution sale, which he could do before, but to enable the sheriff to adjourn, for the reasons named in the section, upon giving one week's notice of the adjourned sale, instead of three weeks notice, before required.

The notification of the levy and of the proposed sale, to give the owner of the estate levied on an opportunity to redeem, is

a distinct thing from the advertisement of sale, and must be posted up three months; whereas the advertisement of sale, as the statute expressly directs, need only be once a week, for three weeks.

AMES, C. J. At the common law, a sheriff charged with a *fi. fa.* was obliged to proceed at once to seize and sell the goods of the execution debtor, having full power over the time, place, and mode of sale, in order to enable him to obey the exigency of his writ. He was not bound to sell at auction; but on the contrary, if he sold in this mode, could not charge against the goods levied the expenses of that mode of sale. If either party to the execution wanted the goods sold at auction, the party requesting it was bound to pay the expenses of sale out of his own pocket. *Woodgate* v. *Knatchbull,* 2 T. R. 148, 156, 157. The officer was not to consider whether it would be of advantage to the debtor to delay the sale or not, his duty being to sell immediately; and if the court found him colluding with the debtor for the purpose of delay, they would fix upon him the whole debt and costs, upon attachment. Ib. 157. If he could not find purchasers for the goods levied, or for enough of them to satisfy the debt and costs, his duty was to return the fact upon his process; and if a *venditioni exponas* was issued to him, he might make the same return to that; since, if the plaintiff in execution was dissatisfied with the return, he might set up a purchaser of the goods himself. *Leader* v. *Danvers,* 1 B. & P. 359, 360. If the goods were sold at auction, it was his duty, however, not to allow them to be sacrificed for want of bidders; and if a small sum in comparison with their value was bid for them, he was to keep them, and return that he did so for want of buyers, and wait for a *venditioni exponas,* which, in such a case, was construed to mean: " Sell for the best price you can obtain." Per Lord Ellenborough; *Keightley* v. *Birch,* 3 Campb. 521, 523, 524.

In this state, the sale of goods upon execution is regulated by statute, with more attention to the interests of the execution debtor. The sheriff is to sell the goods at auction, and not until he has advertised them for sale at least ten days, in order that the debtor may have that time in which to redeem them,

as well as to ensure them against sacrifice. With regard to real estate, which may be levied upon and sold here on execution, the statute still more carefully guards the rights of the debtor, requiring the officer to " set up notifications of said levy in three or more public places in the town where said real estate lies, for the space of three months before the same shall be exposed to sale, notifying all persons concerned, of the levy and intended sale of the estate, that the owner thereof may have an opportunity to redeem the same; " and also to " notify said sale, by causing an advertisement thereof to be published once a week, for the space of three weeks next before the time of sale, in some newspaper in the county where said estate lies ; and if no newspaper be printed therein, then in some newspaper printed in Newport or Providence." Rev. Stats. ch. 195, sects. 8, 11.

The principal purpose of the notifications required to be posted up of the levy and intended sale, both of goods and real estate, is thus declared to be, in substance, with regard to the former, and in words, with regard to the latter, " that the owner thereof may have an opportunity of redeeming the same." Incidentally, however, the notifications served to give notice of the time and place of sale ; and with regard to real estate, until the October session of the General Assembly, 1835, were, and with regard to personal estate now are, the only mode of advertising the time and place of sale, positively required by statute Under these statutes, the practice has been for officers charged with executions, for good cause, to adjourn sales of property real or personal levied upon by them, duly advertising the change of the time of sale, that there may not be a failure for want of buyers. Such power of adjournment was always deemed incidental to the power to sell; the whole of which was intrusted by the execution, under the law, to the officer. No other order was ever issued to him than the execution; a *venditioni exponas* being wholly unknown in the simplicity of our practice. Within the limits of the law, the officer exercised his discretion with regard to the time of sale ; and as no positive publication of the necessary power of adjournment existed upon the statute book, adjourned the sale, from time to time,

as the exigencies of the case required. If he could not, from storms or accidents, reach the place of sale; if reaching it, from want of buyers, he could not sell, or could not sell except at a great sacrifice; in fine, if from any cause, consistently with the performance of his general duty under the execution, the sale could not take place at the time originally appointed, he appointed another time at which it might. Nor was this practice peculiar to ourselves; but in other states this same incidental power was not only possessed, but in proper cases required to be exercised, by sheriffs charged with sales upon execution, as a part of their duty. *Warren* v. *Leland*, 9 Mass. 265, 266; *Tinkom* v. *Purdy*, 5 Johns. 345; *McDonald* v. *Neilson*, 2 Cow. 159, 170, 185, 190, 191; *Russell* v. *Richards*, 11 Maine, 371; *Lantz* v. *Worthington*, 4 Barr, 153; *Richards et al.* v. *Holmes et al.* 18 How. 147. No doubt, officers were liable to either party to the execution, for the improper, and especially fraudulent exercise of this power, to his detriment; but that they were deemed to possess and actually did exercise it, long before our statutes incidentally recognized it as possessed by them, is perfectly notorious.

We do not by this intend to sanction needless adjournments of such sales merely for the purpose of delay, and especially not adjournments made by an officer in collusion with either party, to serve the particular interest of that party, to the injury of the other. When such cases arise, they will be dealt with according to their circumstances; it being perfectly understood that there cannot be a wrong, under our jurisprudence, for which the law in some form does not provide an adequate remedy. In the case at bar, there was not only no collusion of the kind adverted to, but the delay of sale caused by the adjournments was either absolutely required, or, in proper caution, prudent, in order to its validity. Accidentally, — and the evidence does not disclose whether by the carelessness of the officer or of the printer, — the newspaper advertisements of the sale, in both instances, embodied a mistake. In the first, the day of the week for the sale, appropriate to the day of the month named, was mistaken; and in the last, the levy was stated to have been made in January, when it was actually made in February.

Reynolds *v.* Hoxsie.

For the purpose of correcting such mistakes, it was, in our judgment, quite proper for the officer, that the sale might be correctly advertised and all question of its validity upon this ground avoided, to adjourn the sale, as he did, for the periods necessary for this purpose ; and the defendant, at least, whose time to redeem was thereby enlarged, is the last person who has cause to complain of the delay.

Prior to the Revised Statutes of 1857, when the 12th section of chapter 195 was incorporated into our statute law with regard to the service of executions, the usual period of adjournment was from a week to three or four weeks, according to circumstances ; but, without the consent of parties, not in general longer ; since the command in the execution exacted of the officer reasonable diligence in making the money upon it This section did not confer, but only recognized the well-known incidental power of the sheriff, for good cause to adjourn an execution sale ; and its whole force is, in our judgment, expended, by requiring of him to give at least one week's notice thereof in manner provided by law for notice of the original sale. It can have no application to the execution sale in question, which took place in 1855, long before its enactment. We deem this sale good under the law as it then stood, and there is no need of invoking aid from this recent addition to our statutes.

Let judgment be entered for the plaintiff, and execution for possession of the premises demanded issue in accordance therewith.