WILLIAM C. HULL, Respondent, *v.* CORNELIUS VOORHIS *et al.*, Appellants.

1. *Administration — Executor can not purchase at his own sale for himself or others.*— That a trustee, such as an executor, etc., can not become a purchaser or interested in a purchase, at his own sale, is too well and thoroughly settled to permit discussion. And the same rule applies with almost equal force to the employment of the auctioneer or trustee to make bids for the purchaser.

2. *Administration—Sale of real estate by executor—Decree obtained by fraud.* —Where an executor obtained a decree for the sale of real estate of his decedent by representing that such sale was necessary to pay the debts of the estate, one of the principal creditors being a minor heir of the decedent, who had no guardian, and the executor having purchased a large part of the other debts at a large discount; and where the debt due the minor heir had never been probated, and the real estate sought to be sold, in which this minor as an heir was interested, was sure to increase in value, making it more for his interest to receive the land ultimately than to receive the proceeds realized by an immediate sale — *semble,* that such a state of facts would show that the decree was obtained by fraud upon the court, and be alone sufficient to entitle the heir to have the sale under such decree set aside.

3. *Administration—Purchase by executor of debts against the estate—To whom the benefits belong.*—An executor has no claims against an estate for the face of claims which he purchases at a discount. He may so purchase, but not for himself; and all his transactions in that regard should be treated as for the estate, whose agent and servant he is.

*Appeal from St. Louis Circuit Court.*

*Voorhis & Mason,* and *Moodey,* for appellants.

Under our statute (R. C. 1855, p. 147, § 32), an executor might bid at a sale conducted by himself, under some circumstances, even for himself. There was, therefore, no fraud in law in his bidding *per se*, if he had bid for himself; much less where he bid for a third party, under written directions. This supposed rule, that an executor can not in good faith and at a fair public sale cry the bid of an absent purchaser, under written instructions made known to all other bidders, is a rule without a reason. (Richards v. Holmes, 18 How. 143, 148 ; Lucas v. Oliver, 34 Ala. 626, 631 ; Talliaferro v. Minor, 1 Cal. 531 ; 2 Am. Law Reg., N. S., 705–713.)

*Berry* and *Holliday*, for respondent.

I.  The evidence shows that the executor was interested in the purchase of the real estate.  The court was, therefore, right in setting aside the sale.  (Davone v. Fanning, 2 Johns. Ch. 252; Michoud v. Girod, 4 How. 503 ; 1 White & Tud. Lead. Cas. in Eq. 201, note ; Law of Trusts and Trustees, Tiff. & Bull. 149, 483–4.)

II.  The executor was the auctioneer at the sale, and, while acting as auctioneer, bid in the real estate and conveyed the same to his partner, Hellmer.  The auctioneer was incapacitated to bid for his co-defendant, more especially while acting as auctioneer, and without declaring the name of the party for whom he was bidding and buying.  (*Ex parte* Bennett, 10 Ves. Jr. 381 ; Hawley v. Cramer, 4 Cow. 717 ; Davone v. Fanning, 2 Johns. Ch. 252; Thornton v. Irwin, 43 Mo. 153 ; Richards v. Holmes, 18 How. 143.)  If an executor desires to buy at his own sale, he must do so under sections 32 and 33, Gen. Stat. 1865, p. 499.  It was impossible in this case ; the property went below the appraisement.  (Sto. on Agency, 254, § 211, note 4 ; 1 Pars. on Cont. 75, 4th ed. ; 1 White & Tud. Lead. Cas. in Eq. 196, 210 ; Hunt v. Bass, 2 Dev. Ch. 292.)  There was fraud in law ; there was fraud in fact.  (McNair v. Hunt, 5 Mo. 300.·)  "The general rule is that a party can not purchase on his own account that which his duty or trust requires him to sell on account of another.  He can not be both buyer and seller."  (Smith v. Williams, 12 Mo. 109.)  Persons thus intrusted, and thus assuming to act for the benefit of others, can not act for themselves so long as the ordinary signification attaches to ordinary words.  (Wasson v. English, 13 Mo. 176·; Charleville v. Chouteau, 18 Mo. 492 ; Jamison v. Glascock, 29 Mo. 191; Lich. v. Bernecker, 34 Mo. 93; Boardman v. Florez, 37 Mo. 559 ; Beal v. Harmon, 38 Mo. 435 ; Thornton v. Irwin, *supra ;* Thomas v. Zumbalen, 43 Mo. 471 ; Grumley v. Webb, 44 Mo. 444·; Allen v. Ranson, 44 Mo. 263.·)

BLISS, Judge, delivered the opinion of the court.

The plaintiff is the sole heir of Joseph S. Hull, deceased, and defendant Voorhis was his executor. The testator died in July, 1859, the plaintiff being but twelve years of age. He was also the principal creditor of his father, inasmuch as the decedent, as his guardian, had appropriated the child's estate received from his mother. In 1864 the executor obtained from the Probate Court an order for the sale of certain real estate of decedent, for the payment of his debts, being about thirty acres near the fair grounds of St. Louis county, laid out into town lots, and known as Hull's Subdivision, in Grand Prairie common fields.

In applying for the order of sale, he made an exhibit of the estate, and showed that it was indebted to the plaintiff in the sum of $12,310.85, being said guardian's debt, and to other creditors in the sum of $8,771.89, and claimed that it was necessary to sell this land to pay said debts. But the petition did not show that there was any necessity whatever of selling land that was constantly rising in value, in order to pay the boy, who had no guardian, and whose claim had never been presented for allowance; and it also failed to show that of the other debts all but $1,626 belonged to the executor, about $4,000 of which he had purchased at fifty cents on the dollar.

The sale was made at auction in November, 1864, and nearly all the property was bid in, in the name of defendant Hellmer, the business partner of Voorhis, and the deed was made to him. The entry of the transaction upon the partnership books would, taken alone, indicate a partnership interest in the purchase, though it is denied by the partners and book-keeper; but it does not appear that, down to the commencement of this suit, any money had been paid by Hellmer on account of the purchase. It is, however, clear that at the sale the executor and auctioneer were employed by Hellmer to bid for him; that a list of prices for each lot was placed in his hands, beyond which he was not to go; that he sought to get the property for Hellmer as low as possible, and finally succeeded in bidding in nearly all of it for less than the maximum proposed, and less than the appraisal.

Another improper commingling of cross-interests was exhibited at the sale, in the fact that Robert S. Voorhis, a brother of the executor, was his attorney and legal counselor in the matters of the estate, was also the attorney and agent of Hellmer at the sale, and was clerk of the auctioneer.

In 1867, Hellmer advertised the whole property for sale at auction; and before the time of the sale, the plaintiff, then nearly of age, by his next friend, commenced this suit to set aside the original sale to Hellmer, and, upon trial at special term, obtained a decree, which was affirmed at general term.

There is no doubt whatever as to the correctness of this decree. There may be doubt whether the evidence warranted the finding of the Circuit Court, that the executor was personally interested in Hellmer's purchase, although there are circumstances that strongly point in that direction; but the part acted by Voorhis, who, as executor, was under obligation to obtain the highest prices for the property honestly in his power, became also agent of the purchaser, and, as such, interested in obtaining the same property as cheap as possible, is just as fatal to the sale.

The main proposition that a trustee, as an executor, etc., can not become a purchaser or interested in a purchase at his own sale, is too well and thoroughly settled to permit discussion anew. Instances, however, have not as frequently arisen where the courts have been called upon to consider the effect upon the sale of the employment of the auctioneer or trustee to make bids for the purchaser. But in the cases that have arisen the courts have set their face against such a transaction with almost equal uniformity and decision as where the purchase was made by the trustee for himself.

*Ex parte* Bennett, 10 Ves. 381, was a case of bankruptcy, where the solicitor for the assignees and commissioners was employed to bid for an absent purchaser, and obtained the property for a little less than they were authorized to offer. No shadow of actual fraud rested upon the transaction, yet the Lord Chancellor, after considering the matter with great deliberation, and upon different hearings—if a want of deliberation can ever be predicated in any of Lord Eldon's cases—set aside the sale

upon the ground merely that those interested in the estate for the bankrupt acted in the interest of the purchaser; and I have seen no more recent case to contradict the principle of this decision. Richards v. Holmes, 18 How. 143, is claimed by defendant's counsel to have done so; but instead of that, Justice Curtis, in delivering the opinion, expressly recognizes the doctrine of *ex parte* Bennett.

The purchaser, who was the creditor, had sent to the auctioneer a specific bid, which was proclaimed by him, and, as no one bid higher, the property was struck off to him. There was no agency whatever on the part of the auctioneer incompatible with his duty, but he received the bid the same as though made by a bystander. Yet, lest the case might become a dangerous precedent, the judge remarks: "It must be remembered that the auctioneer was not employed as the agent of the creditor to purchase the property for him at the least price at which it could be obtained. Such an agency an auctioneer should not undertake. It is inconsistent with his relation to the seller, and with the faithful discharge of his duty to the seller." A plainer condemnation of the present transaction could not be given.

There are other elements in the case at bar that strongly condemn the action of the executor; and so close is the relation of the purchaser to him that I do not know but they alone would entitle the plaintiff to relief. The original order of sale was obtained by a fraud upon the court. A false exhibit was made of the estate. The executor had no claim upon the estate for the face of these claims he had purchased at a discount. He might so purchase, but not for himself; and all his transactions in that regard should be treated as for the estate, whose agent and servant he was. Nor should he have given in the debt due the young man as one of the reasons for the sale. It had never been probated, and, besides, it was clearly more for his interest to receive the property as heir and devisee, sure as it was to increase in value, than, as creditor, to be paid the proceeds of its sale. This order of sale comes before us collaterally, as it were, and we can not directly vacate it; but the application for the order shows that defendant Voorhis had an imperfect apprehension of

his obligations as an executor, which might have blinded him to the impropriety of acting as agent of the purchaser, striving to obtain the property as cheap as possible, and actually striking it off for a less sum than the purchaser had offered, in writing, to give.

The other judges concurring, the judgment will be affirmed.