## *In re* Mott, Bankrupt.

(*District Court, S. D. New York.* January 17, 1881.)

1. ASSIGNEE'S SALE—BONA FIDE PURCHASER—ORDER OF SALE.

A. and B. were adjudicated bankrupts under the bankrupt law of 1841. A.'s undivided interest in the lands in controversy was sold to C. under an order of court dated June 13, 1868, directing the assignee "to sell the assets hereinafter referred to in each of said matters at public auction, and for cash, by advertising the same one time, 14 days prior to the day of sale, in the newspaper called the *Times,* published in the city of New York," being "all the right, title, interest, etc., of each and either of said bankrupts in and to any and all real estate in any manner described in a certain will of John Hopper," etc. A. died in 1874, leaving a will devising the land. *Held,* upon petition of his devisees to have the sale to C. set aside and annulled:

(1) That C. and his grantees were entitled to avail themselves of all the benefits that may be claimed by a *bona fide* purchaser upon a judicial sale, no bad faith on C.'s part being averred by the petitioners, and it appearing that he actually paid the price bid, which was not alleged to have been inadequate.

(2) That the order of sale was not invalid merely because it did not fix the day and hour at which the sale should take place. The order was a sufficient compliance with section 9 of the bankrupt act.

(3) That the sale was not invalid merely because made at a time to which it was adjourned by the assignee. This was not an appointment of the time of sale by the assignee contrary to section 9 of the act.

(4) That a proper construction of the order of sale was that the assignee might put up both A.'s and B.'s interests for sale together, and therefore the sale was not invalid because so made.

(5) That the order was none the less an order of court because signed by the judge. There is practically no distinction in a court of bankruptcy between an order of the judge and an order of the court, and whenever the judge acts, his act is the act of the court.

(6) That, as the sale was once regularly advertised, the adjournment did not make a new 14 days' advertisement necessary.

(7) That rules 62 and 70 of the rules of court, specifying certain newspapers in which notice of sale must be published, have no application to sales made under the special order of the court.

*In re King,* 3 FED. REP. 839, distinguished.

*Wm. Fullerton* and *Geo. F. Betts,* for petitioners.

*Douglas Campbell* and *E. W. Paige,* for respondent.

CHOATE, D. J. This is a petition to set aside and annul a sale of the interest of the assignee in bankruptcy of Jordan

Mott in certain real estate made by the assignee at public auction on the eleventh day of September, 1868. A grantee of a grantee of the purchaser at the sale, having been served with notice, has appeared, and now moves that the petition be dismissed on the ground that it states no case for setting aside the sale. This motion is in the nature of a demurrer to the petition. The motion was heard, however, upon the petition and upon all the proceedings of record in the case.

Jordan Mott was adjudicated a bankrupt under the bankrupt law of 1841. He died, as appears by the petition, in 1874, leaving a will under which the petitioners claim as his devisees. In his life-time, and subsequent to his bankruptcy, he is alleged to have entered into possession and to have been seized in fee of certain lands—part of the lands included in the sale sought to be set aside—which were set off to him in partition; and the petitioners, as his devisees, claim to have succeeded to his title. This is the interest by virtue of which they claim to set aside the sale, their rights and interest as devisees of Jordan Mott being adversely affected by the title made under his assignee in bankruptcy. It is not suggested, at this stage of the case, that the petitioners have not such an interest as authorizes them to maintain the petition if it states a case for setting aside the sale.

The order of the court under which the assignee acted in making this sale was entitled *In the Matter of Jordan Mott, Bankrupt*, and also *In the Matter of Jacob H. Mott, Bankrupt*, both of which proceedings were pending in this court under the bankrupt law of 1841. The order, which was dated thirteenth of June, 1868, directs the official assignee "to sell the assets hereinafter referred to in each of said matters at public auction, and for cash, by advertising the same one time, 14 days prior to the day of sale, in the newspaper called the *Times*, published in the city of New York, describing the same as follows: "All the right, title, interest, etc., of each and either of said bankrupts in and to any and all real estate in any manner described in a certain will of John Hopper, etc., which is more particularly described as follows:" Then fol-

lows a particular description of several parcels of land in the city of New York.

It appears by the petition that the interest of the assignee in both matters was put up and sold together, and that one James M. Smith, Jr., became the purchaser at the auction sale for the sum of $1,750, which he paid to the assignee, whereupon the assignee delivered to him separate deeds as assignee of Jordan Mott, and as assignee of Jacob H. Mott, which deeds of his interest as assignee of Jordan Mott express, as the consideration thereof for the several parcels of land, the sums of $725, $50, and $50, respectively.

It is not alleged in the petition that Smith was guilty of any fraud or deceit, or that he was not a *bona fide* purchaser, for value, of such interest as was conveyed to him by the assignee; and, although improper motives in respect to the disposition of the proceeds are charged against the assignee, it is not alleged that Smith, the purchaser, was privy to them in any way. Nor is it alleged that the price bid and paid by Smith was less than the interest of the assignee was then worth, or that any other parties were willing, or could have been found, to give any greater sum. It does appear by the petition, on the contrary, and is expressly alleged, that Jordan Mott actually owned the real estate in fee at the time of his death, and was in possession thereof, from which it must be inferred that the interest of the assignee, whatever it may have been, was a mere colorable interest; that that which was sold and bought was merely a right to bring a lawsuit to recover the lands under a title adverse to that under which Jordan Mott held and claimed them. This necessarily disposes of the claim on the part of the petitioners that this sale should be set aside as improvidently made and as injuriously affecting the interests of the bankrupt's estate. Unless there was an inadequacy of price, no such relief could be given on that ground, even if, after this great lapse of time, the petition on that ground would be entertained. I think, also, upon this petition, the purchaser, Smith, and his grantees, are entitled to avail themselves of all the benefits that may be claimed by a *bona fide* purchaser upon a judicial sale, no bad

faith or collusion on his part being averred by the parties seeking to set aside the sale, and the fact appearing that he actually paid the price bid, which is not alleged to have been inadequate. The allegation that Jordan Mott's interest in the lands was worth $500,000 is not and cannot, consistently with other averments of the petition, be construed as an allegation that the interest of the assignee was of greater value than the price paid.

It is claimed, however, that on the facts alleged in the petition the order of the court under which the sale was made was void on several grounds, and also that the sale was not made in conformity with the order, if that was valid.

The first objection to the order is that the court in the order of sale did not appoint the time of sale. The ninth section of the bankrupt act provided that all sales should be "at such times and in such manner as should be ordered and appointed by the court in bankruptcy." It is argued that congress intended that the court should fix the day and hour at which the sale should take place. Such has not been the practical construction put upon the statute by the court, and in the many orders of sale made under that law none are referred to in which the day and hour of the sale were fixed by the court. The making of an order directing the assignee to sell, is ordering the time of sale within the meaning of the statute. The order amounts to a direction that the sale should be made at once, with reasonable diligence, and this is a practical and sufficient compliance with the statute. The further objection—that the assignee, by adjourning the sale from the time first fixed, appointed the time of the sale, instead of the court, as required by the statute—is answered by the same suggestions. It is suggested, indeed, in the argument, that there is no sufficient evidence that the sale was regularly adjourned to the eleventh of September, when it was actually made. It does, however, appear that such an adjournment was advertised in the newspaper as having been made by the assignee. This, together with the general presumption that a public officer does his duty, is, I think, suf-

ficient, especially as against a petition which does not aver that the sale was not adjourned.

It is also objected that the sale was void because the assignee sold the interests of both estates together, whereas the order required him to sell each separately. I think a proper construction of the order is that the assignee might put up both interests for sale together. The order was in both matters. The interest to be sold, as set forth in the description to be inserted in the advertisement, was the right, title, and interest of "each and either" of said estates. If, possibly, the sale of both interests together was liable to cause embarrassment in apportioning the proceeds between the two estates, that is a matter in which these petitioners have no interest, and it would be rather late to give any weight to that consideration now. I see no such serious embarrassment in such a sale as to make it necessary to hold it void on account of any impossibility of apportionment, and I think the assignee did not violate the terms of the order in selling in this way. Whatever interests Jordan Mott and Jacob H. Mott had at the time of their bankruptcy in the lands under the will of John Hopper, if any, which passed to their assignee, the interest was an undivided interest of very uncertain nature. There was no impropriety in ordering them to be sold, and in selling them together, and this mode of selling was more likely, as it seems to me, to attract purchasers.

It is also objected to the order that it was the order of the judge, and signed by him, and not an order of the court, entered in its minutes; but this suggestion is not sustained by the record, which shows that the order was entered at length on the minutes of the court. Its being signed by the judge does not make it any the less an order of the court. Nor is there practically any distiction in this court, as a court of bankruptcy, between an order of the judge and an order of the court, because, under the statute, the court in bankruptcy is always open, and whenever the judge acts, wherever he may be, the act is the act of the court.

It is also objected that the sale was not advertised for 14 days, nor at all, the 14 days' advertisement being for the

fourth of August, and the sale by adjournment being on the eleventh of September, for which time no advertisement was made. But if a sale, once duly advertised, can be adjourned at all, and held on the adjourned day without a new 14 days' notice, the proceeding was regular. And I think the power to adjourn a sale once regularly advertised, in like cases, is well established by constant practice and as matter of authority. *Richards* v. *Holms*, 18 How. 147.

Finally, it is objected that the order and the sale are void because the advertisement was ordered to be inserted and was inserted in the *Times*, and not in certain other newspapers alleged to be designated in the rules of this court then in force. The act provided that it "shall be the duty of the district court in each district, from time to time, to prescribe suitable rules and regulations and forms of proceedings in all matters of bankruptcy, which rules, regulations, and forms shall be subject to be altered, added to, revised, or annulled by the circuit court of the same district, and other rules, regulations, and forms substituted therefor." Under this authority this court adopted certain rules, which were submitted to the circuit court, and the circuit court took no action thereon. Among them were the following:

"62. Six days' previous notice by published advertisement shall be given of the sale of personal effects, and 14 days' of real estate, to be published where notice to show cause on the petition for the decree of bankruptcy was published, and the assignee may also, at his discretion, cause notice to be otherwise published, so as best to benefit the sale."

"70. All notices of proceedings in bankruptcy required to be published in newspapers shall be inserted in at least three of the following newspapers published daily in the city of New York, (of which the *Courier and Enquirer*, having the largest circulation, shall be one:) The *Morning Courier and New York Enquirer*, the *Journal of Commerce*, the *New York Daily Express*, the *New York Standard*, the *New York Commercial Advertiser*, the *Evening Post*, and the *New York American;* the party petitioning having the right, if he chooses to do so, to designate to the clerk the other two papers, an evening

paper being one; but on his omission to do so the clerk will allot the publications to the said papers as equally as conveniently may be; and when the bankrupt resides out of the city and county of New York the court will designate some paper published (if any there be) in the county where he resides."

The petition alleges that notice of the original petition of bankruptcy in this case, which by the act was required to be published in newspapers, was published in the *Morning Courier and New York Enquirer*, the *New York American*, and the *New York Daily Express;* and the illegality alleged in this order of sale is that it did not, in conformity with rule 62, direct advertisement to be made in those three newspapers in which the notice of the original petition was thus published.

An examination of all the orders of sale, in cases in bankruptcy under that act, from 1845 to the present time, directing sales by auction to be made by the assignee, shows that not one is to be found in which the court designated the newspapers required by rule 62, if that rule applied. In many of them a different designation was made. This, it seems to me, is conclusive that rule 62 was not construed as applying to sales made under the special order of the court. A settled construction of a rule by the court which made it, is just as much a part of the rule as its text. The third section of the act vested the estate of the bankrupt in the assignee. It provided that "the assignee shall be vested with all the rights, titles, powers, and authorities to *sell*, manage, and dispose of the same, and to sue for and defend the same, subject to the orders and directions of such court, as fully to all intents and purposes as if the same were vested in or might be exercised by such bankrupt before or at the time of his bankruptcy." The ninth section provided, as above cited, that "all sales, transfers, and other conveyances of the assignee of the bankrupt's property, etc., shall be made at such times and in such manner as shall be ordered and appointed by the court in bankruptcy." These provisions of the statute make the rules, and the practical construction given to them, intelligible. As all sales must be made under

the order and direction of the court, a general rule (62) was made, under which the assignee might act, without applying to the court in the particular case to designate the newspapers in which he should advertise; but this general rule was not designed to restrict the court from making a special order as to the manner of sale, which the court was, by the ninth section, expressly authorized to do. This is made entirely clear by rule 61, which must be read in connection with rule 62, and which provided that "the sale of the bankrupt's estate shall be at public auction, and for cash, unless, on the report of the assignee, or with his assent, it is otherwise specially ordered by the court."

Rule 62, which immediately follows, was designed to carry this into effect, and relates only to auction sales without special order, the court thus directing, under section 9 of the act, that the assignee might in all cases sell at once or at any time at public auction, upon giving the notice prescribed in that rule. As to rule 70, it has no direct application to sales under special orders of the court, for they are not "proceedings in bankruptcy required to be published in newspapers," either by the statute itself or by any other rule. There is, therefore, no force in this objection, and the order being in conformity with the ninth section of the act, and not in violation of any rule of the court, was entirely regular in this respect. It is not intended, by putting the decision on the ground that the order of sale and the sale were not in the particulars complained of irregular, to intimate, or to give any support to the claim of the petitioners, that a judicial sale to a *bona fide* purchaser, consummated by a conveyance and the payment of the consideration, can be avoided because of such error of the court, if there had been errors, the court or the assignee having jurisdiction to order the sale. The general rule undoubtedly is, as to *bona fide* purchasers at judicial sales, that the only questions open are power in the court and good faith in the purchaser. *Voorhees* v. *U. S. Bank,* 10 Peters, 477, and cases cited. But what would be the effect of these alleged irregularities, if they had been such, it is not necessary to inquire.

The case of *In re King*, 3 FED. REP. 839, cited and relied on by the petitioners, was a case of fraud and deceit on the part of the purchaser. It disclosed a purpose to defeat a former and regular judicial sale of the interest of the assignee by a title made under what purported to be a second sale, procured by deceitful practices. The case is no precedent for setting aside this sale, which, so far as the petition shows, was in perfect good faith, so far as the purchaser is concerned, and not subject to the objection taken in the case referred to, that it was without any consideration, or was in derogation of a former regular judicial sale.

The former order of the court in the present case, setting aside an earlier sale upon an early application of a creditor, on the ground that the assignee had withheld from the court information in his possession affecting the value of the property, which, if communicated, might have induced the court to make a different order as to the mode of sale, is also, as a precedent, inapplicable to this case. In fact, the court having the whole of that former proceeding before it adopted the mode of sale directed by this order as most likely to effect a satisfactory sale of the interest vested in the assignee. I see no ground for the suggestion of inadvertence or improvidence, as applied to this order, nor is such a suggestion of any force as against a *bona fide* purchaser.

On these grounds the motion to dismiss the petition must be granted.