CASE 5—PETITION EQUITY—FEBRUARY 7.

# Brannin, Brand & Glover v. Broadus, &c.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. THE PLAINTIFF IN AN EXECUTION MAY LEAVE A SPECIFIC BID WITH THE OFFICER WHICH THE LATTER MAY CRY without violating section 2, article 15, chapter 38, General Statutes. which simply prohibits him in his own behalf from buying or bidding for property at his own sales.

2. EXECUTI·N SALES—CONVEYANCE OF LAND PURSUANT TO PRIOR CONTRACT—EQUITY.—Where an execution defendant conveyed to his mother a tract of land upon which the execution had been levied, one who, in good faith, purchased the land from the mother prior to the sale under the execution, and who at no time had any notice of the levy or the sale, is entitled to equitable consideration, having acted in perfect good faith. And while the deed executed by the execution defendant to his mother, although executed pursuant to a prior written contract, by which he had agreed to thus discharge a debt he owed her, was inoperative to defeat the demand of the plaintiffs in the execution; yet as it was not in fact fraudulent, it conferred an equitable interest on the grantee, and in this action by the execution plaintiffs, the purchasers at the execution sale, to set aside the deed and to quiet their title, while the deed may be set aside, it must be done on equitable terms and with due regard to the rights of the innocent grantee and those claiming under her; and as the judgment of the Chancellor setting aside the execution sale and giving a prior lien to the plaintiffs on the land for their debt effects that end, it will be affirmed.

STONE & SUDDUTH FOR APPELLANTS.

When the bid cried by the sheriff is made by letter, message or otherwise, by a person who does not attend the sale, of a specified

amount, thus depriving the sheriff of any discretion in the matter, the sale is valid. It is only where the sheriff is instructed in such manner as to leave it to his discretion as to the manner of bidding and the amount, that the sale should be set aside. (Freeman on Executions, sec. 292; Dickerman v. Burgess, 20 Ill., 267; Scott v. Mann, 36 Tex, 157; Rorer on Judicial Sales, sec. 745; Mullins, &c., v. Buskirk, &c., MS. Op., Jan. 19, 1884)

WOOD & DAY FOR APPELLEES.

1. The sale by the sheriff in which he bid in the land is void. (Stapp v. Toler, 3 Bibb, 450.

    And this is true, although he bid as the agent of another. (Dixon v. Sharp, 1 A. K. Mar., 211.)

2. The equity of Mrs. Broaddus and Kash was prior to that of appellants, and Mrs. Broaddus having obtained the legal title, their equity was more meritorious than appellants', and the court should have dismissed appellants' petition. (Bettis v. Allen, 10 Bush, 40)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT:

The sheriff of Montgomery county, on August 13, 1885, levied an execution in favor of Brannin, Brand & Glover against John R. Broadus on the undivided interest in remainder of the defendant in a tract of some one hundred and fifty-two acres of land, and after due advertisement sold the same, on September 21, 1885, to the plaintiffs in the execution. The life estate was owned by Mrs. C. A. Broadus, and the interest of defendant, who was her son, was the one undivided one-fifth therein. The plaintiffs in the execution, who are the appellants here, were not present at the sale, either in person or by attorney, but prior to the day of sale their attorney said to the deputy sheriff, "that when he offered said interest for sale under said execution to cry the amount of plaintiffs' bid for the amount of their debt on the day of sale for the whole of said interest, if no one else would

bid that amount for same, and to knock it off to plaintiffs if no one else would bid that amount for it."

The sheriff did as directed. The purchase price of the land was less than two-thirds of its appraised value, and after the expiration of a year the appellants caused the sheriff to make them a deed therefor. This was made on the 11th day of April, 1887. The value of the whole tract, as shown by the investment under the orders of the Madison Court of Common Pleas, was about seven thousand five hundred dollars, and the defendant's interest, not estimating the value of the life tenancy of his mother, who was about sixty-eight or sixty-nine years of age in 1889, was worth some one thousand five hundred dollars. The plaintiffs' bid was three hundred and two dollars and eighteen cents.

On the 17th of September, 1885, the defendant in the execution, J. R. Broadus, who was then living in Owen county, Kentucky, came to Montgomery county, and without notice, as he alleges, of the issual of the execution or its levy, conveyed to his mother, Mrs. C. A. Broadus, his interest in the land, and in this conveyance recites that it was made in pursuance of a written contract, dated September 15, 1884, binding himself to convey said land to her by reason of certain considerations passing between them. He had rented the entire tract from his mother in 1883, for which he was owing her something; and again in 1884, and for this year owed her some six hundred dollars. It is evident that after applying some credits for sale of crops, he owed her in the fall of 1884 some five or six hundred dollars; and the writing referred to in

the deed of September 17, 1885, was executed as a "security" for said rental, or a deed for the interest in case he did not pay the rent.

The deed of September 17, 1885, was indorsed on its back, "Acknowledged by J. R. Broadus September 17, 1885, Priest, clerk. Tax paid September 18, 1885—T. P. Priest, clerk, by J. C. Brown, D. C."

It was brought to the clerk's office by an attorney, who paid the tax, and who told the clerk that he would come in afterwards and order it recorded if he wished it recorded, and he appears in this record as attorney for Mrs. C. A. Broadus. The alleged written contract of September 15, 1884, the existence and date of which is somewhat confusedly testified to by J. R. Broadus, was burned, it is claimed, with the house on said farm in September, 1884; and notwithstanding the request of the mother to that effect, no deed was made to her in pursuance of that writing until September 17, 1885, as shown above.

On November 11, 1885, the appellee, L. C. Kash, by written contract, bought the entire tract of one hundred and fifty-two acres from Mrs. C. A. Broadus for the sum of seven thousand five hundred dollars, of which he was to pay, on January 2, 1886, one thousand five hundred dollars, and to execute his notes, due in one, two, three and four years, respectively, and was to have a deed therefor upon making the first cash payment, which he did, and obtained a conveyance as provided for. He obtained possession of the lands as tenant in March, 1885, and says that more than two months before the execution of the writing of November 11, 1885, he bought the land by an oral

purchase from Mrs. Broadus, who had become the owner in fee of said land, and that he was in the actual adverse possession thereof from that time on, and had no notice whatever of the levy on the land or its sale under any execution. His four notes for one thousand five hundred dollars each, payable to Mrs. Broadus on March 1, 1887, 1888, 1889 and 1890, were all paid by G. W. Goodpaster on the 19th of July, 1888. Goodpaster appears to have bought the land from Kash, and hence paid the unpaid purchase money notes to J. G. Trimble, the owner of them by purchase from Mrs. Broadus.

Upon this state of case the appellants, Brannin, &c., brought this action in equity on March 16, 1886, against J. R. and C. A. Broadus, and to their suit Kash was subsequently made a party-defendant, asking that the deed of September 17, 1885, of J. R. to Mrs. C. A. Broadus, be set aside as fraudulent; that their purchase under the execution sale of September 21, 1885, be upheld, and their right and title to said interest be quieted; and praying further, if this relief be refused, that the execution sale be set aside, and their judgment debt be adjudged unsatisfied.

The defendants set up their claims and equities as foreshadowed herein, and upon preparation and hearing the chancellor adjudged that the deed from defendant J. R. to C. A. Broadus of September 17, 1885, was fraudulent and void as the plaintiffs, that the plaintiffs, by their purchase at the execution sale of September 21, 1885, took nothing, and that the deed of the sheriff to them was void and passed no title, but adjudged plaintiffs a prior lien on said inter-

est by virtue of their levy, and ordered a sale for their benefit.

From this judgment Brannin, &c., have appealed, because their purchase under the execution sale was not sustained, and they were not given the land; and Kash, Goodpaster, &c., complain, by cross-appeal, because the deed of September 17, 1885, from J. R. to C. A. Broadus, was set aside as fraudulent.

The legal inability of the sheriff to cry the bid of the plaintiffs in the execution, and the consequent nullity of the deed made by him in pursuance of such bid, is sought to be established on the authority of Stapp v. Toler, 3 Bibb, 450, where a sheriff himself bought a slave sold under an execution sale made by him. The sale was held invalid in the absence of a statute to that effect, by reason of the obvious absurdity and palpable incongruity of the sheriff uniting in himself the inconsistent characters of both seller and purchaser, and it may be added that such a transaction would now be in direct conflict with section 2, article 15, chapter 38, General Statutes, which provides that "no officer shall directly or indirectly bid for or buy any property which may be sold under an execution by his deputy or principal, or by his co-deputy."

But is this a case where the officer either bids or buys the property in the meaning of the statutes? Does it not mean bid or buy for himself? The case of Dixon v. Sharp, 1 A. K. Mar., 211, is also relied on by appellees and is nearer in point. It was there held that a sheriff could not bid for a purchaser at a sale of land made by him; but this court commented on that case in Mullins, &c., v. Buskirk, decided on

January 19, 1884, and held that where the sheriff was authorized by a letter from the plaintiffs in the execution to bid or cry the debt, interest and costs for the land, if no one else did so, the bid was one made by the parties themselves and not by the sheriff, and the crying of the bid, as authorized, was neither a violation of the letter or spirit of the statute.

In this case the authorization was not in writing, but was none the less specific and direct. No discretion was given the sheriff in crying the specified bid. He was not left to bid as much or as little as he pleased, as we infer may have been the case in Dixon v. Sharp, *supra*. It does not appear that Sharp in that case made any bid, or left any with the sheriff, or authorized the sheriff to make any for him.

We perceive no reason why a plaintiff may not leave a specific bid with the officer which the latter may cry without violating a statute which simply prohibits him, in his own behalf, from buying or bidding for property at his own sales.

It is laid down in Freeman on Executions, section 292, that this doctrine that a sheriff can not act as agent for another in making a sale, "was not to be extended to cases where he is authorized to offer a specified amount in behalf of the absent bidder."

But in this case, while the strictly legal right obtained by plaintiffs might be upheld as indicated, the appellees show themselves to have been without notice of the levy in the country, and sale of the property, and to have bought and paid for same upon the apprehension that it equitably belonged to Mrs. C. A. Broadus under her written contract with J. R. Broad-

us, of September, 1884, and the legal title to which was attempted to be perfected by the conveyance of September 17, 1885.

The appellee, J. R. Broadus, while he was indefinite as to dates, testified most earnestly to the good faith manifested by the parties, and to the fact that the writing was in existence so securing his mother, but was burned in 1884. And while such proof may not be sufficient to raise a prior equity in behalf of appellees as against the appellants' purchase, yet the facts and circumstances showing good faith on their part entitle them to equitable consideration. This is a suit in equity, and we are not disposed to hold that the deed of September 17, 1885, was, in fact, fraudulent, and conferred no equitable interest on the grantee, although certainly inoperative to defeat the plaintiffs' demand.

While the deed may be set aside at the suit of the appellants, it must be done on equitable terms, and with due regard to the equities of the innocent grantee therein, and the parties holding under her.

The judgment of the chancellor, giving a prior lien to the appellants on the interest in question for the full amount of their debt, interest and costs, effects this end, and will, therefore, be affirmed.