Walling. Judge.
*259 In the year 1904, one Carmon obtained a judgment against appellee, in the county court of Teller county, for $113.85 and costs. The judgment credit- or was then and at all times mentioned herein a resident of the state of Washington, and he was represented by Victor H. Miller, an attorney-at-law residing at Cripple Creek, who prosecuted the claim to judgment. In April, 1907, execution was issued upon the judgment, by direction of Miller, as attorney for the judgment creditor, to the sheriff of the City and County of Denver, and levied on real estate in that city and county, owned by appellee, and occupied by himself and family as their residence. The levy was followed by sale of the property, under the execution, to the appellant, and, after the expiration of the statutory period of redemption, a sheriff’s deed was executed to it. Thereafter this suit was commenced by appellee to set aside the execution sale, and cancel the sheriff’s deed. The appellee obtained a decree in the district court, setting aside the sale and deed, upon the payment to the appellant of the purchase price paid for the property at the sheriff’s sale, with interest. The court incorporated in the decree its findings of fact and conclusions of law, from which it appears that the decree was based upon the theory of gross inadequacy of the price bid, and for which the property was sold at the execution sale, to-wit, $100, coupled with supposed unfairness in the conduct of the sale. The ultimate finding of fact was as follows: “That the facts and circumstances connected with the said sale are not sufficient to establish actual fraud on the part of either the purchaser, or officer conducting the sale, or the' judgment creditor, but are suf *260 ficient to show an unfairness in the conduct of the sale and not such as to encourage competition and adequate bids for the property.” It was concluded, as matter of law, (1) “that inadequacy of price is not within itself sufficient to warrant the setting aside of the sale;” and (2) “that the circumstances of unfairness proven are not .alone sufficient to invalidate the sale;” but (3) that the two elements combined were sufficient to justify the decree. On the part of the appellant it is contended that the evidence did not support the findings of the trial court, that the facts found, so far as supported by any evidence, did not warrant the conclusions based thereon, and that the decree was contrary to the evidence and the law. Without special reference to the findings, it is insisted by counsel for the appellee, in support of the decree, that the purchase price bid was grossly inadequate; and, further that there was evidence of irregularities in the levy and sale, which, in connection with the alleged inadequacy of price, sufficed to avoid the execution sale and sheriff’s deed, as against the appellant. The evidence respecting the value of the property was, as is usually the case, very much in conflict, and covered a somewhat wide range of estimation. The trial court found that the property was “of the value of at least two thousand dollars,” which sum was less than the estimate of some of the witnesses, and more than that of others, and may be considered as representing a fair average of all of the opinions given in testimony. The complaint alleged that the value of the property was $2,300. In view of the superior advantages possessed by the trial court for weighing the testimony, its finding with respect to the value *261 will be accepted. The property was encumbered, at the time of the sale, with a mortgage amounting to $1,200. We have not been referred to any authority in support of the conclusion that, under such circumstances, the bid of $100 for the property at the execution sale was grossly out of proportion to its true value. The general trend of judicial opinion seems to be to the contrary, especially where the debtor is allowed by law a right of redemption from the sale. - “At judicial sales, where there is a redemption, it is a well known fact that lands, unless where necessary to secure the debt, are rarely sold at anything approximating their real value. Such purchases are not looked upon as a desirable mode of investment. There is seldom competition. The creditor, for the most part, has to take the land in satisfaction of his debt and wait for it to be redeemed.” Watt v. McGalliard, 67 Ill., 513, 517. See also Clark v. Chapman, 98 Calif., 110; Kerr v. Haverstick, 94 Ind., 178. The learned trial judge rightly concluded that the sale ought not to be vacated for inadequacy of price. Conway v. John, 14 Colo., 30; Watt v. McGalliard, supra; 2 Freeman on Exec. (3rd ed.), sec. 309; Griffith v. Milwaukee Harvester Co., 92 Ia., 634.
Considering the objections to the sheriff’s deed, arising out of claimed irregularities in the levy of the execution and the conduct of the sale thereunder, it will be observed that the deputy sheriff, who appears to have had the levy and sale in charge, was dead at the time of the trial. The facts, with respect to the proceedings under the execution, depend upon the testimony of the appellee, and of Victor H. Miller, who was the attorney for the plaintiff in the *262 execution, and was also vice-president and general attorney of the appellant, and acted for the latter in bidding at the sale. Miller was called for cross-examination, under the statute, by plaintiff’s counsel, and the facts developed upon his examination stand uncontradicted. Appellee testified, in his own behalf, that he had no notice or knowledge of the issuing of the execution, or of anything done thereunder, until after the sheriff’s deed had been recorded, and demand was made upon him for possession of the property by the appellant, through Miller, as its agent and attorney. It was not claimed that the execution or the return of the sheriff thereon disclosed any defect, or that the sale was not duly advertised, in the manner required by law. The contention is made, however, that the sheriff violated his duty in the premises, by failing to notify the defendant of the existence of the execution, so as to give him the opportunity to either pay the debt, or designate other property, sufficient to satisfy the writ, before levying upon his residence. In support of this claim, reliance is placed upon section 2539 Mills’ Ann. Stats, (section 3608, R. S. 1908): “The plaintiff in execution may elect on what property he will have the same levied, except the land on which the defendant resides, which shall be last taken in execution, excepting and reserving, however, to the defendant in execution such property as is, or may be, by law exempted from execution.” That section was part of the laws enacted by the first territorial legislature, and re-enacted in the revised statutes of 1868; and it has reappeared in each successive revision and compilation of the laws of the state. It does not seem to have been construed or *263 mentioned in any decision of onr courts. We have no statute, which in terms requires demand upon or notice to the defendant in execution, prior to the levy of the writ. In fact, no method of procedure is prescribed, with respect to the levy of an execution, out of a county court, upon real estate, whether situated in the county wherein the judgment was rendered, or in another county. Section 2583 Mills’ Ann. Stats. (section 3637, R. S.) refers, only to an execution issued out of a district court. See Herr v. Broadwell, 5 Colo. App., 467.
"It has generally been held that it is not essential to the validity of the levy that the officer should give the debtor notice before making the levy, unless service of the writ is required by statute, even though the debtor has the right to designate which class of property shall be first taken,” etc. 11 Am. & Eng. Enc. of Law, 650. A different rule, however, has prevailed in Illinois from an early period. See cases cited in 11 Am. & Eng. Enc. of Law, 650, note 2. Section 2539, Mills’ Ann. Stats. (3608, R. S.), above quoted, so far as it relates to levying upon the land on which the defendant resides, more closely resembles a similar provision of the laws of the state of Illinois, existing both before and after the year 1861, than any to which our attention has been called; and it is reasonable, therefore, to consult the decisions of the Illinois courts, in arriving at a proper construction of our statute. The Illinois statute of 1845 provided: The plaintiff may elect on whát property of the defendant he will have his execution levied, except the land on which the defendant resides, and Ms personal property, which shall be last taken on execution.” With *264 out undertaking to review the decisions of the courts of that state, bearing upon the matter in question, it is enough, at present, to say that those decisions lead to the conclusion, that, in case of the levy of an execution on land on which the debtor resides, without giving him an opportunity, when practicable, to designate other property of his sufficient to satisfy the writ, the levy ought to be set aside, upon a timely application by the debtor, accompanied with a satisfactory showing of other property, subject to levy, sufficient to satisfy the execution. Pitts v. Magie, 24 Ill., 610. No decided case has-been brought to our notice, in which it was held that a failure of the officer to notify the defendant in the execution, before levying upon his real estate, would authorize a court of equity to set aside the sheriff’s sale and deed, after the expiration of the statutory period of redemption. The tendency of the decisions in Illinois, as elsewhere, is in the opposite direction. Gardner v. Eberhard, 82 Ill., 316; Rock v. Haas, 110 Ill., 528; Davis v. Chicago Dock Co., 129 Ill., 180, 191.
‘ ‘ The failure to give the defendant notice of the levy of a writ, or of the time when his property will be offered for sale thereunder, is a mere irregularity, which he waives if he does not urge it in due time, and this urging must ordinarily be by some attempt to prevent the sale before it takes place, or to vacate it afterward and before a conveyance to the purchaser.” 2 Freeman, Exec., sec. 285.
Appellant had no interest in the judgment against the appellee, and had nothing to do with any of the proceedings thereunder prior to the date of the sale. "Whatever may have been the nature of *265 Miller’s agency, in connection with, the business of the appellant, it is clear that he was acting as attorney for the judgment creditor, and in no wise for the appellant, in what he did with respect to issuing and directing the levy of the execution. It has been remarked that the only evidence of the circumstances surrounding the levy is found in Miller’s testimony, who stated that he put the execution in the hands of the officer, and instructed the sheriff to collect the money, if possible, out of personal property; that the officer, after investigating three or four hours, told him, Miller, that he could not find any personal property, and that he told the sheriff to levy on this real estate. He further said that he did not communicate with appellee in any manner, either before or after the levy; but that he did not know whether or not the sheriff made any demand of appellee, or personally notified the latter of the execution. Miller was under no personal duty to appellee to notify him, and it does not appear that Miller actually knew that the sheriff had not done so. As between the plaintiff in execution and himself, Miller was clearly bound to give suitable instructions to the officer holding the writ, and he would have been responsible to his client for any injurious consequences resulting from his failure to do so. But whether Miller knew of the failure of the sheriff to make demand of appellee or not, his knowledge in that regard could not be imputed to the appellant. Beyond that, mere imputed notice of the irregularity on the part of the sheriff would not furnish ground for attacking the title conveyed by the sheriff’s deed. It is believed that nothing less than collusion between the officer and the pur *266 chaser would justify the cancellation of the sheriff’s deed for the irregularity in making the levy.
It appeared that, on the day of the sale, the deputy sheriff telephoned to Miller, who was in Cripple Creek, that he could find no bidders for the property, and asked Miller what he should do. After consulting with his wife, who was the secretary of the appellant, Miller telephoned the deputy to bid $100 and no more for The Victor Investment Company.” Miller did not know who was present at the sale, or whether anyone was there present besides the deputy sheriff; but the latter informed him that there were no bidders. This was all the proof offered, concerning what occurred at the sale. It is strongly contended, on behalf of the. appellee, upon this testimony, that the sheriff undertook to act as agent for the appellant, in bidding at the execution sale, and that that fact alone should avoid it. On the other hand, appellant’s counsel argue that there was no impropriety in receiving the bid of $100 over the telephone, provided that the officer made public outciy of the bid, at the place of sale, before striking off the property to appellant. Ve think that, up to this point, the weight of authority sustains the position of. the appellant. There seems to have been no intention to confer discretionary authority upon the sheriff to bid for the appellant, but the amount of the bid-was definitely fixed at $100 and no more. In these circumstances, it could not be important whether the bidder was present at the place of sale, or communicated his bid over the telephone.
In Wenner v. Thornton, 98 Ill., 156, 169, it was said:
*267 “Respecting the point, that Houtze acted as the agent of Wenner in purchasing, as well as the agent of the court in selling, the land, all there is of that is, that it appears that it being impossible for Wenner to attend the sale, he sent by Houtze on the morning of the sale a bid for the land of the sum of $4,596, and Houtze struck off the land to Wenner for that sum. We think that where there was no more of an agency exercised than appears here, it is not ground for setting aside a sale. The bid sent appears to have been a definite and fixed one, without any discretion in Houtze to vary it. Wenner simply gave the trustee the bid that he was willing to make. This court gave sanction to such a transaction in Dickerman et al. v. Burgess et al., 20 Ill. 266, a case of a sheriff’s sale under execution upon a bid sent to him by letter. The court say: ‘Nor do we mean to be understood as objecting to receiving a bid by letter — but the officer must cry the bid, and if there be no advance on it, he would be justified in selling at the bid. The debtor has a right to insist upon all the forms.’ ”
See also 2 Freeman, Exec. (3rd ed.), sec. 292; Brannin v. Broadus, 94 Ky., 33.
The rest is not so easy, however, since there was no direct proof that the officer did or did not cry the bid communicated- by telephone. Counsel for appellant insist that the presumption must be indulged that the officer did his duty in the premises, and that the bid was duly cried, while appellee’s counsel assert with positiveness, apparently born of conviction, that the burden of showing a fair public sale devolved upon the appellant. As to this, it may be said that the execution of the sheriff’s deed to ap *268 pellant was alleged in tlie complaint, and nothing was averred or has been claimed against its prima facie regularity. It was and is provided by our statute, relating to the deed of the sheriff executed in pursuance of an execution sale,'that “any deed so executed shall be evidence that the provisions of the law in relation to sales of land upon execution were complied with, until the contrary shall be shown,” etc. Under this plain provision of the statute, and in the absence of any evidence of fraud on the part of the purchaser, it is not going too far to say that the burden was with appellee to prove such illegality or irregularity in the sale, as would suffice to overcome the presumption of legality attached to the sheriff’s deed. Bay State etc. Co. v. Jackson, 27 Colo., 139. This being true, the evidence produced at the trial was wholly inadequate to warrant the decree of the court.
The fact that Miller acted as attorney both for the execution creditor and the purchaser at the sale was not a matter which, in itself, affected any right of the appellee. Miller did'not represent the latter, in any aspect, and owed him no direct duty. If it was Miller’s duty to notify the judgment creditor of the levy and sale, it was not one on which the appellee had a right to or did rely. There was no evidence to justify the assumption that it was Miller’s intention, at any time prior to receiving the telephone message from the sheriff, on the day of the sale, to bid on the property, either for himself or for the appellant.
It would be more satisfactory, as a matter of feeling, if we were able to reach a different conclusion in this ease, but we have no right to determine *269 a cause on sympathetic grounds alone, at the expense of sound legal doctrine, and so create a precedent to menace the stability of judicial sales. The appellee’s want of knowledge of the execution issued under the judgment against him, and the levy and sale thereunder, could not, in any event, be attributed to the appellant. It is probably true that the officer, in making the levy, followed the usual custom of filing a certificate of levy with the county recorder, and it is a matter of presumption that a duplicate of the certificate of sale issued to the purchaser was recorded, as provided by law. It is not claimed that appellee did not have knowledge of the judgment against him, and he also knew that it was unsatisfied. His remaining in ignorance of the execution was due to inattention to his own affairs, as was also his failure to protect whatever equity there was in the family residence by taking advantage of the homestead law. It would seem, then, that he has only himself to blame for his misfortune, from which equity is powerless to relieve him. The courts are without power to arbitrarily extend the statutory period of redemption, for the purpose of relieving the hardships of individual cases, in the absence of some recognized ground for equitable interference. The attitude of the appellant, in holding to the advantage obtained through legal forms, may be characterized as hard and unconscionable, but such shortcomings are cognizable only in foro conscientiae, and not in foro legis. To sustain the decree of the district court, upon the facts appearing in this record, would be to declare the execution of a sheriff’s deed, after sale under execution and expiration of the statutory period of redemption, the excuse for the *270 institution of a new litigation. The judgment must be reversed.
Decided May 13, A. D. 1912.
Rehearing denied June 10, A. D. 1912.

Reversed.