OVERTON, J.
 

 Sarah Jenkins, now deceased, Wás the owner of three of a series of promissory notes, secured by special mortgage and vendor’s privilege on property, located on the shores of Lake Pontchartrain, in the parish of St. Tammany. She died, leaving the plaintiffs, Percy Jenkins, Sidney Jenkins, Francis Jenkins, and Mrs. Edna Jenkins, wife of Eugene Mumford, as her heirs, who inherited the notes owned by her, each of which is for the sum of $1,333.33.' The first of the notes was paid, at maturity, but the remaining two were not. At the time of the death of Sarah Jenkins, the remaining of the series, secured by the same privilege and mortgage, three in number, each for $4,333.33, were outstanding, owned by H. A. Soulie, the first of which was paid at maturity, but the remaining two have not as yet been paid. All of the notes were made by the Pine Grove Land Company, Inc., the defendant, named in the title of the case.
 

 Two of the notes, owned by plaintiffs, not having been paid at maturity, the mortgage securing them was foreclosed, at plaintiffs’ instance, by executory process. The property was offered without the benefit of appraisement, and at the sale F. C. Codifer, who had acquired Soulie’s interest, in the two remaining notes, held by him, bid $500 for the, property on which the mortgage rested. No one else bid on the property. The sheriff then remarked, substantially, that it would be a
 
 *533
 
 sacrifice to let the property go at that price, and, without adjudicating the property, left the auction stand, going to his office, where, within four or five minutes, he got in communication, by long-distance telephone, with one of plaintiffs’ attorneys, who tendered a bid'of $3,500 for the property. In the meantime, Oodifer insisted that his bid should be accepted, and he recognized as the legal adjudicatee of the property, and tendered to the ■sheriff the amount of his bid, at the same time insisting on the execution of a deed to him by the sheriff. The sheriff refused the. tender, and, upon receiving the bid by long-distance telephone, returned to the auction stand, from which he had been absent for a few minutes, and announced that he had a bid for $3,500, and ashed for other bids. Codifer then, after protesting against the continuation of the auction, and after reserving his rights under his bid, bid $3,550, and, no one else bidding, the property was adjudicated to him for that sum.
 

 Immediately thereafter, Oodifer ruled the sheriff and plaintiffs to show cause, why he should not be recognized, in law, as the adjudicatee of the property on his bid of $500. There was judgment on the rule, rejecting this demand, and decreeing Oodifer the adjudicatee of the property for the sum of $3,-550.
 

 Oodifer must fail in his rule to be declared the adjudicatee of the property for the sum of $500. His bid, at that sum, was not accepted by the sheriff, as is evidenced by the fact that the sheriff did not adjudicate the property to him for that amount. There must be an offer and an acceptance in a sheriff’s or auction sale as well as in a private or other sale. Thus, it is said, in Corryolles v. Mossy, 2 La. 504, that: “We cannot distinguish between a proposition made to purchase at auction, from that which may take place in a private contract. Assent is required from both parties, in each mode of contracting, before the agreement is complete. *
 
 * * ”
 
 The property does not pass until the offer is accepted, which is shown by the adjudication of the property. Without an adjudication title does not pass.
 

 Whatever remedy the bidder may have, to whom property has not been adjudicated, he must find in some other remedy than in one to be recognized, by operation of law, as the adjudicatee. United States v. Vestal (D. C.) 12 F. 59. Here, if the bidder had any right to do so, he has not sought to annul the sale t.o the end that the property might be reoffered, but has rather studiously avoided any such course.
 

 In fact, though it is not necessary to the decision, .we are not prepared to hold that the sheriff’s conduct, in this instance, was improper.. Auctioneers are given considerable latitude, consistent with fairness, in obtaining the best price possible for the property. Richards v. Holmes, 18 How. 143, 15 L. Ed. 305. Moreover, it has been held, in another jurisdiction, that a bid by long-distance telephone is valid, where, as here, upon a communication made by the sheriff, the bid was made: Victor Inv. Co. v. Roerig, 22 Colo. App. 257, 124 P. 349.
 

 In this ease, the bidder, it may be said, is not in position to annul the adjudication made to' him for $3,550. It was unnecessary for him to make such bid to protect what rights he might have acquired under his $500 bid. Having made the bid, he is bound by the adjudication.
 

 The case also presents a question as to the proper distribution of the proceeds of the sale. Prior to the sale, and soon after plaintiffs had instituted their proceedings by ex-
 
 *535
 
 ecutory process, Soulie, claiming to be tbe owner of tbe remaining notes, secured by tbe áame mortgage, filed an intervention, in wbicb he asked that executory process issue to satisfy the notes held by him, and in which he also asked that he be paid ratably with plaintiffs out of the proceeds of the sale.
 

 Later, though before the sale, but after executory process had issued and Soulie had filed his intervention, claiming, among other things, the righ't to be paid ratably with plaintiffs, out of the proceeds of'the sale of the property mortgaged, Soulie sold the two notes, still held by him, to Codifer. Codifer was then substituted in the intervention in place of Soulie, who passed out of the proceedings.
 

 Plaintiffs urge that they are entitled to payment out of the proceeds of the sale by preference over Codifer. This position rests upon the contention that Sarah Jenkins, their ancestor in title, acquired the notes held by them, from Soulie, and that Soulie,’after his rights and plaintiffs’ rights had become fixed as to the proceeds to be derived from the sale by the institution of the foregoing proceedings, sold the notes, held by him, to Codifer, and that, as Soulie, after these rights had become fixed, could convey no greater rights than he had, his transferree, Codifer, is in no better position, and hence, no more than Soulie could, can he invoke the doctrine that transferees of mortgage notes, secured by the same mortgage, though deriving their titles from the same author, share ratably in the proceeds of the sale, but is bound by the doctrine that a transferror of one or more of a series of notes, secured by the same mortgage, cannot compete with his transferree in the proceeds of the sale.
 

 We find it unnecessary to consider-the doctrine, invoked by plaintiffs, for we' think the record discloses that Sarah Jenkins was not, in reality, a transferree of Soulie, save only in form.
 

 It appears that she and Soulie owned adjoining property on the shores of Lake Pontchartrain in the parish of St. Tammany. Such property, in 1925, was in demand. Miss Jenkins had received offers for hers, but only such as were wholly unsatisfactory. Soulie, who was her neighbor, suggested to her that they sell their property together, as if it were one tract. This was satisfactory to Miss Jenkins, and to carry out this she executed in favor of Soulie a power of attorney. Later, however, it was realized that as Miss Jenkins was suffering from heart disease, she might die at any time, in which event the power of attorney would fall. Therefore, it was suggested that she transfer the property she de-. sired to sell to Soulie.
 

 About that time she executed an instrument, confirming negotiations that Soulie had made to sell her land, in connection with his, fdr $25,000, of which she was to receive $8,000 for her property, and declaring at the same time, that she had given Soulie an agreement of sale, binding herself to sell him her property at the foregoing price of $8,000. Shortly after the execution of this instrument, she signed a sale, purporting to transfer the property to Soulie for the recited consideration of $8,000 cash. This sale was not recorded at the time, but was withheld from recordation until Soulie had sold to the Pine Grove Land Company, l^ic., his land and hers, when the two sales were recorded at the same time.
 

 The sale by Soulie to the Pine Grove Land Company, Inc., was made for the sum of $25,-000,'of which $8,000 was paid cash, and the balance in six promissory notes, secured by special mortgage and vendor’s privilege on the property sold, two payable one year after-date, one for the sum of $4,333.33, and the
 
 *537
 
 other for the sum of $1,333.33, and the remaining for similar sums, two of which were payable two years after date, and the remaining two, three years after date, all of which were made payable to the order of the Pine Grove Land Company and by it indorsed in blank.
 

 On the consummation of the sale, Soulie paid $4,000 of the cash part of the consideration to Miss Jenkins, and delivered to her the three notes for $1,333.33, which were evidently made for her benefit, not in settlement of the recited consideration of the sale by her to Soulie, which was declared to be cash, but as her agent in the sale of her property, together with his, to the Pine Grove Land Company, Inc.
 

 Plaintiffs objected to parol evidence offered, in the effort to show the foregoing facts, on the ground that parol evidence is not admissible to contradict or vary a written act, and that, in this instance, it contradicts and varies the deed from Miss Jenkins to Soulie..
 

 The title to real estate is not involved here. The situation brought about by the execution of the deed to Soulie is such as to require explanation, when considered in connection with Miss Jenkins’ act, confirming Soulie’s negotiations, and when these two instruments are considered in connection with the deed by Soulie to the Pine Grove Land Company.
 

 The manner of making the notes in the last-named deed, two payable on the same day in each of the three years in which the mortgage was to run, in different amounts, when consid’ered in connection with the act of confirmation and her declaration therein contained as to her agreement to sell, create grave uncertainty as to whether or not the sale to Soulie ¡was anything more than a mere form of conveying the property to some other purchaser.
 

 In these circumstances, we think that parol evidence is admissible to explain the situation, and that the trial court properly received it. This evidence, in connection with the circumstances mentioned, makes it clear that the deed by Miss Jenkins to Soulie was a mere form of conveyancing, adopted under the stress of circumstances, by which Miss Jenkins, through Soulie, was to convey her property, in connection with Soulie’s, to the Pine Grove Land Company, and that the notes she received, which plaintiffs herein have inherited, were not acquired by her as Soulie’s transferree, but through Soulie, as her agent, from the Pine Grove Land Company, as part payment of her part of the price in the sale to that company.
 

 Therefore, as Miss Jenkins did not acquire the notes from Soulie, there is no reason why Codifer, as Soulie’s transferree, cannot compete with the heirs of Miss Jenkins, the plaintiffs herein, although it be held that Codifer does not possess the rights of an ordinary transferree, as he purchased after the litigation began. Codifer is therefore entitled to share ratably in the proceeds of the sale with plaintiffs.
 

 For these reasons, the two judgments, appealed from, are affirmed.